IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**BRET R.,**

    **Plaintiff,**

v.                                                 **CIVIL ACTION NO. 3:22-cv-00525**

**MARTIN J. O'MALLEY**
**Commissioner of Social Security,**[1]

    **Defendant.**

**PROPOSED FINDINGS & RECOMMENDATION**

Plaintiff Bret R. ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–33. By standing order entered on January 4, 2016, and filed in this case on November 18, 2022, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4). Presently pending before this Court are Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 13), and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 14).

---

[1] Commissioner O'Malley was substituted in place of Acting Commissioner Kilolo Kijakazi following O'Malley's appointment on December 20, 2023.

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 13), **GRANT** the Commissioner's request to affirm his decision (ECF No. 14), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

## I. BACKGROUND

### A. *Information about Claimant and Procedural History of Claim*

Claimant was 59 years old at the time of his alleged disability onset date and subsequently changed age category to "closely approaching retirement age" by the date of the decision by the Administrative Law Judge ("ALJ"). (Tr. 25).[2] He has a limited education. (Tr. 25). His past work included roles as a diesel mechanic and vehicle inspector. (Tr. 25). Claimant alleges that he became disabled on June 2, 2017, due to "neck degenerative bone disease," "low back degenerative bone disease," and "arthritis." (Tr. 115, 264).

Claimant filed his application for benefits on August 23, 2019. (Tr. 15). His claim was initially denied on August 28, 2020, and again upon reconsideration on March 17, 2021. (Tr. 15). Thereafter, on April 13, 2021, Claimant filed a written request for hearing. (Tr. 15). An administrative hearing was held before an ALJ on February 10, 2022, via telephone. (Tr. 35–70). On April 29, 2022, the ALJ entered an unfavorable decision. (Tr. 27). Claimant then sought review of the ALJ's decision by the Appeals Council on May 5, 2022. (Tr. 238). The Appeals Council denied Claimant's request for review on November

---

[2] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 9.

4, 2022, and the ALJ's decision became the final decision of the Commissioner on that date. (Tr. 1).

Claimant timely brought the present action on November 16, 2022, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed a transcript of the administrative proceedings (ECF No. 9). Claimant subsequently filed his Brief in Support of Motion for Judgment on the Pleadings (ECF No. 13), and, in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 14). As such, this matter is fully briefed and ready for resolution.

### B. *Relevant Medical Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes the relevant portions here for the convenience of the United States District Judge.

#### 1. *Treatment Records*

Claimant has been diagnosed with chronic pain syndrome, subacromial bursitis of the left shoulder, obesity, and lumbar and cervical spine spondylosis by his pain management doctor, Pramod Kumar, MD, and has been treated by him since 2006 for complaints of neck, left upper extremity, and bilateral knee pain, which began with insidious onset before 2000. (Tr. 21, 503). Dr. Kumar evaluated Claimant approximately once every three months during the relevant period. (Tr. 21). Dr. Kumar's records appear to largely carry over notes and do not vary in terms of the physical examinations from month to month or year to year. (Tr. 468, 504, 528, 663, 819).

Between 2017 and May 2019, Claimant's primary care provider was Donald Klinestiver, M.D. (Tr. 21, 354-58). Dr. Klinestiver's progress notes document Claimant 's prescribed medications, blood work, and Claimant's weight. (Tr. 21, 354-58). A

3

September 2017 lumbar spine x-ray showed no fracture or subluxation, and mild disc space loss at L1-2, L4-5, and L5-S1 with mild facet arthropathy. (Tr. 21, 386, 405). An October 2018 lumbar spine x-ray showed mild disc space narrowing at L4-5, moderate disc space narrowing at L5-S1, and facet arthropathy at L5-S1, with no significant change noted from the 2017 x-ray. (Tr. 21, 513). A February 2019 lumbar spine MRI showed that disc bulges and facet arthropathy produced mild spinal canal or neural foraminal stenosis at L1-2, L2-3, and L3-4. (Tr. 22, 549). At L4-5, a disc bulge and facet arthropathy produced mild spinal canal stenosis, moderate right lateral recess stenosis, and mild bilateral neural foraminal stenosis. (Tr. 22, 549-50). At L5-S1, a disc bulge and facet arthropathy produced mild canal stenosis and severe bilateral neural foraminal stenosis. (Tr. 22, 549-50). The following month, an EMG/NCS was normal, with no evidence of lumbar radiculopathy or focal neuropathy on examination. (Tr. 22, 358, 546).

In May 2019, Claimant established primary care treatment with Mary Vaughn, FNP-BC. (Tr. 22, 400). He reported difficulties with urination but expressed no other concerns. (Tr. 22, 400). He was continued on medications and referred to urology. (Tr. 22, 403-04). In late October 2019, Claimant reported to Dr. Kumar that his current medication kept his symptoms under control, and he requested to start Celebrex for breakthrough pain. (Tr. 22, 467). In August 2020, Claimant attended a consultative examination conducted by Laura Cunnings, FNP-C. (Tr. 22, 622-25). Ms. Cunnings found that Claimant was mildly obese, and he had a mildly antalgic gait, but he was able to squat, walk on his heels and toes, and perform a tandem gait without difficulty. (Tr. 22, 623-24). Claimant's Babinski's signs were negative, and he had normal sensation and no evidence of atrophy. (Tr. 22, 624). He had reduced flexion, abduction, external, and internal rotation bilaterally. (Tr. 22, 624–25).

During a November 2020 annual wellness examination, Claimant reported weakness with walking and climbing stairs, but he denied increased lumbar pain or any other complaints. (Tr. 22, 644). Ms. Vaughn noted that Claimant was self-reliant in usual daily activities. (Tr. 22, 645). Although Claimant had a spasm of the paraspinal lumbar muscles, straight leg raise testing was bilaterally negative, and the exam was otherwise normal. (Tr. 22, 646-47). During a second consultative examination in March 2021, Ms. Cunning observed that Claimant had a mildly antalgic gait and mild obesity, but no neurological abnormalities or abnormalities of the extremities. (Tr. 23, 650-51). He had full dexterity and grip strength; he could perform tandem gait and squat without difficulty; he had normal sensation; and he was able to get on and off the exam table without difficulty. (Tr. 23, 651). He reported some back pain, but straight leg raise testing was negative. (Tr. 23, 651). He demonstrated normal range of motion in the lumbar spine and mildly reduced range of motion in the cervical spine, but his left shoulder range of motion was more limited than the right, and more limited than the prior consultative exam. (Tr. 23, 651-52). Although Claimant indicated having reduced range of motion of the left shoulder, he reported to Dr. Kumar the following month that he could use his left shoulder more and that his pain improved since his January 2021 injection. (Tr. 23, 682).

During a March 2021 audiology evaluation, Claimant reported having "fairly constant" bilateral tinnitus for nearly six years. (Tr. 23, 658). He described his hearing overall as satisfactory, though he had problems with background noise and distractions. (Tr. 23, 658). Testing was indicative of largely intact hearing perception, and the progress notes indicate normal to moderate sensorineural hearing loss. (Tr. 23, 658-60). Despite having bilateral tinnitus, he did not wear hearing aids. (Tr. 23, 58). In April 2021, Claimant reported significant improvement in shoulder pain after a therapeutic injection

5

in January 2021, with improved use and satisfaction with the outcome. (Tr. 23, 682, 694). Claimant denied hearing loss, muscle spasms, joint paint, or muscle aches, and a normal mental status was also recorded. (Tr. 23, 683). Dr. Kumar noted a reduced and painful range of motion in the neck, with tenderness in the cervical and lumbar paraspinal muscles. (Tr. 23, 683). Claimant had a normal gait and no weakness of the upper or lower extremity muscles. (Tr. 23, 683).

In July 2021, Claimant had a heart attack and underwent implantation of stents. (Tr. 24, 762–63, 790, 818). At discharge, he was advised to take aspirin, Effient (a platelet aggregation inhibitor used in conjunction with aspirin), Metoprolol (a beta blocker), Lisinopril, and Lipitor, and he could use nitroglycerin sublingually up to three times/day. (Tr. 24, 731). In October 2021, Claimant reported increased left shoulder pain, as well as neck and lower back pain, but he had significant relief from use of medications without adverse side effects. (Tr. 24, 795). Claimant had a follow-up appointment in January 2022; he stated that a left shoulder injection from three months earlier was still helping; he also reported improved functioning in his left shoulder with pain medications; and he denied adverse side effects from medication. (Tr. 24, 818).

### 2. *Opinion Evidence*

On August 27, 2020, Narendra Parikshak, MD, a state agency medical consultant, opined that Claimant can perform medium exertion level work, except he can occasionally climb, he can frequently balance, stoop, kneel, crouch, and crawl, he can frequently reach overhead and in all other directions with the bilateral upper extremities, and he must avoid concentrated exposure to extreme cold, vibration, and hazards. (Tr. 105–12). On March 16, 2021, state agency medical consultant, Amy Wirts, MD, affirmed Dr. Parikshak's opinion on reconsideration. (Tr. 120–30).

### *3. Hearing Testimony*

Claimant and a vocational expert testified at the hearing before the ALJ on February 10, 2022. Claimant testified that he quit his last job in 2017 because his degenerative bone disease was "getting bad." (Tr. 47). He had been working as a vehicle inspector, which required him to crawl underneath trucks, inspect them, and crawl back out from underneath them. (Tr. 48). He was having trouble getting underneath the trucks and standing back up, and his legs and back hurt "all the time." (Tr. 47–48). Regarding daily tasks, Claimant stated he could still bathe and dress himself, but he had difficulty tying his shoes. (Tr. 49). He stated he was not doing any chores around the house. (Tr. 49). He used to mow the lawn weekly, but, because his back pain became more severe in the last year, he stopped mowing, and he and his wife hired someone else to mow the lawn for them. (Tr. 50). He could lift and carry eight to ten pounds, and he could stand for about 20 to 30 minutes before needing sit down or lean on something. (Tr. 51–52). He went grocery shopping sometimes, and the heaviest thing he lifted at the store was a gallon of milk. (Tr. 54).

In response to questions from his counsel, Claimant further testified that he experienced a "burning sensation" in his back and neck while walking, and he sometimes was woken up by pain during the night. (Tr. 58–59). Two to three times daily, he had to lay down for fifteen to twenty minutes due to his back, neck, and shoulder pain. (Tr. 59). He did not wear hearing aids. (Tr. 58). He had not received injections to his shoulder in about a year prior to the hearing. (Tr. 53). Claimant further testified he could drive for ten to fifteen minutes at a time before taking a break, (Tr. 61)., and that he could walk up to 120–130 feet at a time. (Tr. 63). He could kneel, but it was very painful, and he has previously stumbled and fallen due to the low back pain. (Tr. 60). He stated he could lift

7

his left arm "a little bit above [his] head." (Tr. 63). Claimant also testified that his pain affected his concentration and causes him to have problems with others being around him (Tr. 60).

After Claimant testified, the ALJ questioned a vocational expert ("VE") to aid her in determining whether Claimant could perform his past relevant work or other work. (Tr. 64). The ALJ asked the VE to classify Claimant's past relevant work, and the VE testified that Claimant's past work matched a composite job: diesel mechanic (heavy, skilled work) and vehicle inspector (light, semi-skilled work); the VE classified Claimant's work as being performed at the heavy exertion level. (Tr. 64–65). The ALJ next asked the VE if a hypothetical individual of the same age, education, and work experience as the Claimant could perform the past work, if they could perform medium exertion work, but could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; frequently reach overhead and in all other directions with the bilateral extremities; and must avoid concentrated exposure to extreme cold, vibration, hazards, and loud noise, such as heavy traffic. (Tr. 65). The VE testified that such an individual would not be able to perform the past work. (Tr. 65). Then, the ALJ asked the VE if the hypothetical individual she had asked about previously could perform other work. (Tr. 65–66). The VE testified that the hypothetical individual would be able to work as a food service worker, wall cleaner, and cook helper. (Tr. 66). The ALJ asked the VE how various modifications to the hypothetical might affect the available jobs: if the individual could never climb ladders, ropes, or scaffolds, the wall cleaner job would be eliminated; if the individual could lift and carry twenty five pounds frequently and occasionally, those jobs would not be at the medium exertion level; and if the individual could never climb ladders, ropes, or scaffolds, and was required to sit for five to ten

8

minutes for every thirty minutes standing, all jobs at the medium exertion level would be eliminated. (Tr. 67).

### C. Sequential Evaluation Process

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or

9

combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's

symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether he can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point,

11

"the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find him "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot perform other work, the ALJ will find him "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements and was insured through the date of the decision. (Tr. 17). She further determined that Claimant had not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. 17). She found that Claimant's subacromial bursitis, spondylosis, obesity, hearing loss with tinnitus, and chronic pain syndrome constituted "severe" impairments. (Tr. 17). However, she found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18–19). The ALJ found that several other of Claimants' conditions did not constitute severe impairments: hypertension, hyperlipidemia, urethral stricture, and a history of myocardial infarction. (Tr. 18). The hypertension and hyperlipidemia were treated with medication, and Claimant's blood pressure was well-controlled in August 2021; the urinary symptoms were resolved following a cystoscopy; and Claimant reported no chest pain in August 2021 following his July 2021 myocardial infarction, with no further follow-up required. (Tr. 18). Additionally, while there were some indications in the record that Claimant had depression and had at times complained of anxiety, the ALJ determined

12

there was no medically determinable mental health impairment, as his mental status examinations were consistently within normal limits, his PHQ-2 scores were zero, and he was noted to have a euthymic mood, not appearing anxious or depressed. (Tr. 18). Upon assessing Claimant's RFC, the ALJ determined that Claimant is able "to perform medium work . . . except [he] can occasionally climb ladders, ropes, scaffolds, ramps and stairs; can frequently balance, stoop, kneel, crouch and crawl; can frequently reach overhead and in all other directions with the bilateral upper extremities; and must avoid concentrated exposure to extreme cold, vibration, hazards and loud noise, such [as] heavy traffic." (Tr. 19).

The ALJ concluded that given the limitations imposed by the Claimant's RFC, he was unable to perform his past relevant work. (Tr. 25). She noted that Claimant is "closely approaching retirement age" with "a limited education" and that "[t]ransferability of job skills [was] not material to the determination of disability." (Tr. 25). Because the ALJ determined that Claimant was unable to perform the full range of medium work, she enlisted a VE to aid in her finding that Claimant is capable of working as a food service worker, wall cleaner, or cook helper. (Tr. 26). As a result, the ALJ concluded that Claimant was not under a disability during the relevant time period. (Tr. 26).

## II.   LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it

must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

### III. ANALYSIS

In support of his appeal, Claimant argues that the ALJ erred by failing to properly evaluate (1) Claimant's self-description of his limitations, and (2) the medical opinion evidence, particularly that of Dr. Nutter. Claimant concludes that the ALJ thus erred by failing to account for the "total limiting effects" of Claimant's impairments in determining a Claimant's RFC, as required by § 404.1545(e). (ECF No. 13 at 3). In response, the Commissioner argued that Claimant's arguments were conclusory and that the ALJ's determination was supported by substantial evidence and should be affirmed. (ECF No. 14 at 1).

#### A. *Failure to Develop Evidence*

Claimant's first assignment of error is that the ALJ failed in her duty to fully develop the medical/mental evidence regarding Claimant's multiple medical conditions. (ECF No. 13 at 10). An "ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record." *Cook v. Heckler*, 783 F.2d 1168,

1173 (4th Cir. 1986). The ALJ "cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Id.* However, an ALJ's duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Perry v. Astrue*, No. 3:10-CV-01248, 2011 WL 5006505, at *16 (S.D.W. Va. Oct. 20, 2011) (quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001)); *Fuller v. Saul*, No. 3:19-CV-00174, 2020 WL 597596, at *5 (S.D.W. Va. Jan. 13, 2020), *report and recommendation adopted,* 2020 WL 597425 (S.D.W. Va. Feb. 6, 2020).

The ALJ's duty is to ensure that the record contains sufficient evidence upon which the ALJ can make an informed decision. *Ingram v. Commissioner of Social Security Administration,* 496 F.3d 1253, 1269 (11th Cir. 2007); *Weise v. Astrue,* No. 1:08-cv-00271, 2009 WL 3248086 (S.D.W. Va. Sept. 30, 2009); *Jones v. Saul*, No. 1:19-cv-275-GCM, 2020 WL 2411635, at *3 (W.D.N.C. May 12, 2020). Consequently, when examining the record to determine if it was adequate to support a reasoned administrative decision, the Court looks for evidentiary gaps that resulted in "unfairness or clear prejudice" to Claimant. *Marsh v. Harris,* 632 F.2d 296, 300 (4th Cir. 1980).

Ultimately, the claimant must establish a prima facie entitlement to benefits, and he or she consequently bears the risk of nonpersuasion. *Bell v. Chater*, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (citing *Seacrist v. Weinberger,* 538 F.2d 1054, 1057 (4th Cir. 1976) and 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.")). Thus, the ALJ is not required to act as a claimant's counsel and can presume that the claimant's counsel presented the strongest case for benefits. *Bell v*, 1995 WL 347142, at *4; *Perry*, 2011 WL 5006505, at *15. The ALJ's duty to develop

15

the record does not permit a claimant, through counsel, to rest on the record and later fault the ALJ for not performing a more exhaustive investigation. *Perry*, 2011 WL 5006505, at *15 (citations and markings omitted).

In this case, Claimant does not identify any gaps in the record or further evidence that the ALJ should have developed. Claimant's assertion that "[t]he ALJ completely ignored claimant's testimony and medical documentation", (ECF No. 13 at 12), is plainly contradicted by the ALJ's decision, which cites to both Claimant's testimony and the medical documentation of his conditions. (Tr. 17–27). To the extent the ALJ did not discuss certain other aspects of his testimony or treatment notes, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Claimant's conclusory assertion that the ALJ failed to develop the record does not assert a viable challenge to the Commissioner's decision. S*ee, e.g., Nelson v. Saul*, No. 3:20-CV-00586, 2021 WL 1603812, at *8 n.3 (S.D.W. Va. Apr. 7, 2021), *report and recommendation adopted*, 2021 WL 1601747 (S.D.W. Va. Apr. 23, 2021) (discussing that a claimant waives a challenge by raising it only in a conclusory fashion). Indeed, the Court should not be tasked with researching and constructing Claimant's arguments for him. Claimant fails to specify any deficiencies in the record. Claimant does not identify any further inquiries that the ALJ should have made or indicate what further evidence was necessary for the ALJ to render a decision on his disability application. Moreover, Claimant confirmed by counsel at his administrative hearing that he had no objections to the record before the ALJ. (Tr. at 38–39). Claimant had the opportunity to raise any issues concerning development of the record, but he declined to do so. For those reasons, the undersigned **FINDS** that the

record was sufficiently developed for the ALJ to make an informed decision on Claimant's applications for benefits.

### B. Step Three Finding

Second, Claimant argues that the ALJ failed to consider and properly evaluate whether his combination of impairments satisfied the step three Listing. (ECF No. 13 at 12). A claimant should be found disabled at the third step of the sequential evaluation process when his or her impairments meet or medically equal an impairment included in the Listing. The Listing describes for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. §§ 404.1525, 416.925. The Listing is intended to identify those individuals whose mental or physical impairments are so severe that they would likely be found disabled regardless of their vocational background; consequently, the criteria defining the listed impairments is set at a higher level of severity than that required to meet the statutory definition of disability. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Because disability is presumed with a listed impairment, "[f]or a claimant to show that his impairment matches a [listed impairment], it must meet all of the specified medical criteria." *Id.* at 530. If the claimant is unable to demonstrate that his impairments, alone or in combination, match the criteria of a particular listed impairment, the claimant may still establish disability by showing that his impairments are medically equivalent to the listed impairment.

To establish medical equivalency, a claimant must present evidence that his impairment, unlisted impairment, or combination of impairments, is equal in severity and duration to all criteria of a specific listed impairment. *Id.* at 530; *see also* 20 C.F.R. §§ 404.1526, 416.926. In Title 20 C.F.R. §§ 404.1526, 416.926, the SSA sets out three ways

17

in which medical equivalency can be determined. First, if the claimant has an impairment that is described in the Listing, but (1) does not exhibit all of the findings specified in the listing, or (2) exhibits all of the findings, but does not meet the severity level outlined for each and every finding, equivalency can be established if the claimant has other findings related to the impairment that are at least of equal medical significance to the required criteria. *Id.* §§ 404.1526(b)(1), 416.926(b)(1). Second, if the claimant's impairment is not described in the Listing, equivalency can be established by showing that the findings related to the claimant's impairment are at least of equal medical significance to those of a closely analogous listed impairment. *Id.* §§ 404.1526(b)(2), 416.926(b)(2). Finally, if the claimant has a combination of impairments, no one of which meets a listing, equivalency can be proven by comparing the claimant's findings to the most closely analogous listings; if the findings are of at least equal medical significance to the criteria contained in any one of the listings, then the combination of impairments will be considered equivalent to the most similar listing. *Id.* §§ 404.1526(b)(3), 416.926(b)(3). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment … A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan,* 493 U.S. at 531. The claimant bears the burden of production and proof at this step of the disability determination process. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

In this matter, the ALJ concluded that Claimant did not have an impairment or combination or impairments dents that met or medically equaled the severity of any of the

impairments in the Listing. (Tr. 18). Claimant's conclusory assertion that his medical and mental conditions "when combined, totally disable him and exceed the combination of impairments listing" fails to assert a specific challenge to the Commissioner's decision. (ECF No. 13 at 13). As Respondent notes, Claimant's arguments "are devoid of supporting facts and do not identify any error warranting remand." (ECF No. 14 at 1). Claimant effectively waived this challenge by raising it only in a conclusory fashion. S*ee Nelson*, 2021 WL 1603812, at *8 n.3. The ALJ articulated her findings that Claimant's impairments did not satisfy the Listing criteria. (Tr. at 18-19). Claimant does not adduce any evidence or argument to dispute the ALJ's analysis. The decision documents the ALJ's well-supported rationale for finding that Claimant's impairments, alone or in combination, did not preclude him from engaging in substantial gainful activity. (Tr. 18–19). The ALJ specifically considered Listings 1.15, 1.18. and 2.10, and thoroughly discussed why Claimant's impairments did not meet the requirements of any of those three listings. (Tr. 18–19). To the extent that the ALJ did not elaborate further on the analysis of Claimant's impairments in combination, the undersigned finds further elaboration was unnecessary because the required analysis clearly took place. Therefore, the undersigned **FINDS** that the ALJ complied with her duty under the applicable law to consider Claimant's impairments in combination at step three of the sequential evaluation.

### IV.  *CONCLUSION*

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 13), **GRANT** the Commissioner's request to affirm his decision (ECF

No. 14), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Chambers.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTERED: February 29, 2024

Dwane L. Tinsley
United States Magistrate Judge